IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JACK BAILEY, JR., | § | |
| | § | |
| *Plaintiff,* | § | SA-21-CV-00658-OLG |
| | § | |
| vs. | § | |
| | § | |
| TWIN EAGLE SAND LOGISTICS, LLC, | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant Twin Eagle's Motion for Summary Judgment [#22]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#25]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be **GRANTED**.

## I.  Background

This case arises out of Plaintiff Jack Bailey, Jr.'s employment with Defendant Twin Eagle Sand Logistics, LLC ("Twin Eagle"). Bailey alleges that Twin Eagle discriminated him based on race, disability, and age and wrongfully terminated his employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Texas Commission on Human Rights Act ("TCHRA"), and Texas Rehabilitation Act. According to Bailey's Complaint, Twin Eagle refused to provide him reasonable accommodations for his disability after two knee

1

surgeries; subjected him to a hostile work environment; denied him merit-based pay raises to which he was entitled; and terminated his employment for unlawful and discriminatory reasons.

Bailey pleads three causes of action in his Complaint—race discrimination under Title VII (Count I), age discrimination under the ADEA (Count II), and disability discrimination under the ADA (Count III).  Although Bailey's Complaint also references a violation of the Family Medical Leave Act (FMLA), he does not plead a cause of action under this statute.

Twin Eagle has now moved for summary judgment as to all of Bailey's claims.  Bailey has filed a response in opposition [#23], and Twin Eagle has filed a reply [#24].  The motion is now ripe for the Court's review.

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th

Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

The summary judgment record establishes the following facts, which are undisputed unless otherwise indicated. Twin Eagle is a company providing full-service frac sand logistics for the oil and gas industry. (Balfe Decl. [#22-1], at ¶ 2.) One of Twin Eagle's services is to offer transloading services and storage across many of the basins of the United States, including the Central Eagle Ford Shale in Elmendorf, Texas. (*Id.*) Twin Eagle operates a facility in Elmendorf known as the Mission Rail facility, which is a 1,000-acre terminal designed to handle the largest unit trains in the frac sand industry. (*Id.* at ¶ 3.) The facility houses a 60 million pound frac sand silo system, which is one of the largest in the country, and staffs around 22 to 24 employees, dispersed between day and night shifts. (*Id.*)

Bailey, an African American, was hired by Twin Eagle as a Transloader on April 17, 2017, and began work on April 22, 2017. (*Id.* at ¶¶ 5–6; Bailey Aff.[1] [#23-1], at 1.) Bailey was

---

[1] Twin Eagle argues in its reply that Bailey's Affidavit is not competent summary judgment evidence because it is "mired in conclusory, unsubstantiated allegations, many of which are contrary to Bailey's deposition testimony and other evidence." Twin Eagle asks the Court to strike it in its entirety on these bases. The Court grants Twin Eagle's objection in part,

54 years old at the time of hiring.  (Hildebrand Decl. [#22-2], at ¶ 4.)  During his employment, Bailey was supervised by Greg Hildebrand, Terminal Manager for the Mission Rail site, a Caucasian just one year younger than Bailey.  (*Id.* at ¶¶ 4, 6; Bailey Aff. [#23-1], at 2.)

As a Transloader, Bailey worked outdoors and loaded sand to trucks within the facility. (Hildebrand Decl. [#22-2], at ¶ 3; Transloader Job Description [#22-4], at 2–3.)  A few months later, he was promoted to a night-shift Scale House Operator position.  (Balfe Decl. [#22-1], at ¶ 6.)  As Scale House Operator, Bailey worked indoors and was responsible for loading the proper amount of sand onto sand trucks within the facility via an automated (but monitored) system. (Hildebrand Decl. [#22-2], at ¶ 6.)  He was also in charge of data entry for each vehicle.  (*Id.*) The position is considered a desirable light-duty assignment, as it is a desk position inside the climate-controlled scale house.  (*Id.* at ¶ 3; Scale House Operator Job Description [#22-5], at 2.)

In 2018, Bailey took medical leave for two knee surgeries.  According to Hildebrand, Bailey approached him in May 2018 and advised he would be going on medical leave for a knee replacement and the other knee would be replaced later that same year.  (Hildebrand Decl. [#22-2], at ¶ 6; Bailey Aff. [#23-1], at 2.)  After the first surgery, Hildebrand received a doctor's note from Bailey's medical provider, clearing him to return to work on July 6, 2018.  (Hildebrand Decl. [#22-2], at ¶ 7; Doctor Note [#22-7].)  Bailey returned to his position as Scale House Operator after his leave of absence.  (Bailey Dep. [#22-3], at 192:21–193:15.)

During Bailey's medical leave for his second surgery, Bailey contacted Twin Eagle regarding an issue regarding his claim for "Short Term Disability" benefits from his first leave of absence.  (Balfe Decl. [#22-1], at ¶ 10.)  According to Katie Balfe, Twin Eagle's Vice President of Human Resources, Bailey complained to Twin Eagle that he was denied coverage for

---

and any conclusory statements are disregarded. But the Court has considered the factual assertions in the affidavit.

disability benefits by a third party carrier.  (*Id.*)  Twin Eagle maintains that it had absolutely no involvement in any such determination.  (*Id.*)

Hildebrand received another doctor's note from Bailey's medical provider following his second surgery, releasing him back to work "with no restrictions" on January 1, 2019. (Hildebrand Decl. [#22-2], at ¶ 7; Doctor Note [#22-8].)  Again, Bailey returned to his position as Scale House Operator after his medical leave.  (Bailey Dep. [#22-3], at 192:21–193:15.)

Later that year, in September 2019, Bailey was promoted to Scale House Operator 2. (Hildebrand Decl. [#22-2], at ¶ 3.)   The following month, Bailey filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission (TWC), complaining of race, age, and disability discrimination.  (EEOC Charge [#23-1], at 20.)  In the Charge, Bailey alleges that Hildebrand and Human Resources representatives Eric Guzman and Chris Taylor informed him that he was not allowed to return to work without a full release from his medical doctors, as the company did not have "light duty" work.  (*Id.* at 19.)   Bailey contends that other similarly situated non-Black and younger coworkers were allowed to return to work and perform "light duty" tasks after their medical procedures, whereas he was not.  (*Id.*)

The only other incident referenced in the EEOC Charge is an August 2019 site visit by corporate representative Maria Mendoza, during which she allegedly conveyed to Bailey and others that hard work is rewarded by Twin Eagle.  (*Id.*)  According to the Charge, after the visit, Bailey asked why two non-Black, younger employees were given pay raises and he was not, despite his impeccable performance record.  (*Id.*)  Bailey complains in the Charge that he never received a response from Twin Eagle about his inquiry.  (*Id.* at 19–20.)

According to Twin Eagle, there was a behavioral incident with Bailey on March 5, 2020, when he was chosen for a random drug test and was asked to come in to work early for the test. (Hildebrand Decl. [#22-2], at ¶ 11.)  Hildebrand states that Bailey was hostile to Hildebrand and used expletives, ordering Hildebrand to "never fucking do this to [him] again" and stating that making him come in early for work "just for a fucking drug test was a bunch of bullshit."  (*Id.*) Bailey's affidavit also mentions an incident related to a workplace drug test, but this incident allegedly occurred almost two years earlier in May 2018.   (Bailey Aff. [#23-1], at 8–11.) According to Bailey, he was approached by an aggressive man in a truck, who threatened him with termination if he did not attend the testing.  (*Id.*)  Bailey states in his affidavit that he believes this was a "hostile racially charged scene" and that he complained to Twin Eagle about the incident, but Twin Eagle retaliated against him for being "an older Black man with a need for surgeries and reasonable accommodations."  (*Id.* at 9–10.)

Twin Eagle terminated Bailey's employment on May 5, 2020.  (Balfe Decl. [#22-1], at ¶ 5; Termination Ltr. [#23-1], at 124.)  Twin Eagle maintains the termination was a lay-off as part of a reduction in force due to the business downturn accelerated by the COVID-19 pandemic. (Balfe Decl. [#22-1], at ¶ 5.)   The letter provided to Bailey at the time of termination states the same.  (Termination Ltr. [#23-1], at 124.)

In April 2021, Bailey received a Notice of Right to Sue from the EEOC, indicating that the EEOC had decided not to pursue the investigation any further.  (Right to Sue [#23-1], at 104.)  Bailey filed this suit on July 9, 2021, alleging wrongful termination and discrimination based on race, age, and disability.

## IV.  Analysis

Twin Eagle moves for summary judgment on all of Bailey's claims arising under Title VII, the ADEA, and the ADA, and corresponding state law, arguing that these claims fail as a matter of law.  The undersigned agrees and finds the Court should grant the motion in full. Before addressing the merits of Plaintiff's claims under Title VII, the ADEA, and the ADA, the undersigned will address the some threshold issues as to the factual scope of Bailey's claims.

**A.**  **Bailey's claims concerning conduct occurring before December 8, 2018, are time-barred.**

Twin Eagle contends that all of Bailey's claims based on employment actions allegedly occurring before December 8, 2018, are time-barred.  The undersigned agrees.  Under Title VII, the ADEA, and the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful practice.  *See* 29 U.S.C. § 626(d)(1)(B).  Under Chapter 21, a plaintiff must file a charge with the TWC within 180 days. Tex. Lab. Code §§ 21.201, 21.202. Because Bailey dual-filed his Charge, however, his deadline extends to 300 days for all claims. *See Champlin v. Manpower Inc.*, No. 4:16-CV-00421, 2018 WL 572997, at *5 (S.D. Tex. Jan. 24, 2018).

Bailey filed his EEOC and TWC Charge on October 4, 2019; thus, all claims based on discriminatory acts occurring prior to December 8, 2018, are time-barred.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Bailey's first medical leave occurred in the Spring of 2018.  It was during this period of time that Twin Eagle allegedly discriminated against him by denying his claim for "Short Term Disability" benefits.  Additionally, the alleged denial of his request for light-duty assignments by Twin Eagle following his <u>first</u> medical leave occurred prior to December 8, 2018, as Bailey was

cleared to return to work with no restrictions after his first knee replacement surgery on July 6, 2018.[2]  Finally, Bailey alleges the racially hostile incident involving a man in a truck and a drug test occurred in May 2018, so also prior to December 8, 2018.  In summary, because Bailey alleges that the aforementioned conduct occurred more than 300 days prior to the filing of Bailey's EEOC Charge, it cannot form the basis of any of his discrimination claims under Title VII, the ADEA, the ADA, or corresponding state laws.

**B.    Bailey failed to exhaust his administrative remedies as to any claim of wrongful termination.**

Defendants argue that Bailey's claims related to wrongful termination fail as a matter of law because Bailey did not exhaust his administrative remedies as any claims arising out of the termination.  The undersigned agrees.  Plaintiffs suing under the ADA, Title VII, or the ADEA must exhaust their administrative remedies before filing a civil lawsuit.  *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378–79 (5th Cir. 2019) (per curiam).   The only Charge of Discrimination filed by Bailey was filed in October 2019, while he was still employed by Twin Eagle.  Bailey did not file a second Charge of Discrimination or supplement his Charge after his termination in May 2020.   Yet Bailey's Complaint repeatedly references his "wrongful termination."  (*See, e.g.*, Compl. [#1], at ¶ 10 (basing Title VII claim on wrongful termination).)

Bailey argues that his claims based on his alleged wrongful termination are not barred because they relate to other conduct referenced in his EEOC Charge and the "continuing violations" doctrine relieves him of the obligation to file an amended or additional Charge of Discrimination.  Bailey's application of this doctrine is misplaced.

---

[2] However, it is possible that the alleged denial of Bailey's request to be assigned light-duty work after his <u>second</u> surgery could have at least in part occurred after December 8, 2018, as Bailey was not cleared to return to work without restrictions until January 1, 2019.  Thus, this claim is not time-barred.

"[T]he continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). The doctrine does not relieve a plaintiff of administrative exhaustion requirements for discrete discriminatory acts, such as termination of employment, even when they are related to acts alleged in timely filed charges. *Morgan*, 536 U.S. at 113–14. Accordingly, to the extent Bailey asserts disability, race, or age discrimination based on his termination of employment, such claims have not been exhausted and therefore may not be asserted in this lawsuit.

**C.    Twin Eagle is entitled to summary judgment on all of Bailey's claims.**

Excluding Bailey's pre-December 2018 and wrongful termination allegations, Bailey's claims are based on assertions that he was denied a light-duty assignment after his <u>second</u> surgery, generally subjected to a hostile work environment, and denied merit-based pay raises he believes he deserved. Again, although Bailey's Complaint references the FMLA, he does not assert a cause of action under this statute. Thus, the Court construes this case as arising only under Title VII, the ADEA, and the ADA (and corresponding state laws), and the live pleading as only asserting claims of race, age, and disability discrimination[3] (including claims of a hostile work environment and denial of reasonable accommodations). Bailey's state law claims are analyzed under the same framework as his federal claims. *Williams v. Tarrant Cnty. Coll. Dist.*, 717 Fed. App'x 440, 445 (5th Cir. 2018) (ADA); *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439

---

[3] Bailey's response to Twin Eagle's motion for summary judgment, however, also references national origin discrimination. Because Bailey did not plead this claim in his Complaint, it is not properly before the Court. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

(5th Cir. 2012) (ADEA); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (Title VII).

Twin Eagle argues that it is entitled to summary judgment on Bailey's claims under Title VII, the ADEA, and the ADA.  The undersigned agrees.  Bailey has not presented sufficient evidence from which a reasonable factfinder could conclude that he is disabled under the ADA or that Twin Eagle failed to reasonably accommodate any disability.  Nor has Bailey identified an adverse employment action that could give rise to claims of race or age discrimination under Title VII or the ADEA.  Finally, as to Bailey's hostile work environment claim, the summary judgment record does not evidence any workplace conduct rising to a level of severity to be actionable under federal anti-discrimination laws or linking that conduct to harassment based on a protected characteristic.

> i.    **Bailey cannot prevail on his disability discrimination claim because he cannot prove he was under a disability or that Twin Eagle denied him a requested accommodation.**

Bailey alleges he was discriminated against on account of his disability and that Twin Eagle failed to provide him with a reasonable accommodation for that disability.  To prevail on a disability discrimination claim under the ADA, an employee must prove that (a) he is disabled, (b) he is qualified for the position, (c) he was subjected to an adverse employment action because of his disability, and (d) he was treated less favorably than similarly situated non-disabled employees.  *See E.E.O.C. Chevron Phillips, Chem. Co.*, LP, 570 F.3d 606, 615 (5th Cir. 2009).

The threshold requirement in a disability discrimination claim is that the plaintiff must establish that he has a "disability," as defined under applicable law.  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).  The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such

individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Bailey has not established his disability by any of these means.

Bailey's alleged disability is related to his knees.  On the summary judgment record before the Court, Bailey cannot demonstrate that he has a knee disability substantially limiting one of his major life activities.  Nor has he provided any evidence of a medical record of a knee disability or that Twin Eagle regarded him as having such disability.  Rather, the record establishes that Bailey was released without any work restrictions as of July 7, 2018, after his first knee replacement surgery, and again on January 1, 2019, after his second surgery.  An employee is not considered "disabled" if he is released to work without restrictions.  *See Carmouche v. MEMC Pasadena, Inc.*, No. 06-2074, 2008 WL 2838474, at *9–10 (S.D. Tex. Jul. 21, 2008) (holding that the plaintiff was not "disabled" under the ADA after he was released to return to work without restriction following a four-month leave of absence).

Furthermore, Bailey admitted in his deposition that his doctor did not provide him with light-duty restrictions post-surgery.  (Bailey Dep. [#22-3], at 178:21–179:3.)  Rather, the doctor ordered Bailey to stay home from work post-surgery and then cleared him for work with no restrictions soon thereafter.  (*Id.*)  Bailey's speculation that he *could* have been given light-duty restrictions because he personally felt he was capable of working immediately following his surgery (*see id.*) does not establish disability under the ADA.

Nor can Bailey demonstrate that Twin Eagle failed to accommodate any purported disability by failing to give him a light-duty assignment after his second knee surgery.  To establish a failure to accommodate claim under the ADA, a claimant must show that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential

limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020). Where the "disability, resulting limitations, and necessary reasonable accommodations[] are not open, obvious, and apparent to the employer, the initial burden rests upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Jackson v. Blue Mountain Prod. Co.*, No. 18-60361, 2019 WL 927076, at *3 (5th Cir. Feb. 21, 2019) (internal quotation and citation omitted). Again, there is no evidence that Bailey or his medical provider gave Twin Eagle notice of any restrictions on Bailey that would implicate a need for possible workplace accommodations on account of a disability. Moreover, as Bailey himself admits—his job as a Scale House Operator was already a light-duty role. (Bailey Dep. [#22-3], at 151:9–13.) In fact, Bailey admitted it was the "the lightest duty" job available at the Mission Rail site. (*Id.*) It is unclear what accommodation Bailey claims to have been seeking from his employer post-surgery.

For these reasons, Bailey cannot demonstrate that Twin Eagle discriminated against him based on a disability or failed to accommodate a disability, and summary judgment in favor of Twin Eagle is warranted on Bailey's ADA claims.

    ii.    **Bailey cannot prevail on his Title VII and ADEA discrimination claims because he cannot prove he was subjected to an adverse employment action or treated differently from a similarly situated coworker outside his class.**

Bailey alleges that he was subjected to race and age discrimination in violation of Title VII and the ADEA. To establish a prima facie case of Title VII race discrimination or ADEA age discrimination, a plaintiff must show that (1) he belongs to a protected class, (2) he was subject to an adverse employment action, (3) he had satisfactory job performance, and (4) was treated differently from similarly situated employees outside of his protected class (here, race

and age).  *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021); *Maestas v. Apple, Inc.*, 546 Fed. App'x 422, 426 (5th Cir. 2013).  The definition of an adverse employment action is the same under the ADEA as the standard for Title VII.  *Welsh v. Ft. Bend Indep. Sch. Dist.*, 941 F.3d 818, 821, 824 (5th Cir. 2019).  Bailey cannot demonstrate that he was subjected to any adverse employment action cognizable under either statute or that he was treated differently from a coworker outside of his class.

Adverse employment actions under Title VII and the ADEA are limited to ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.  *Id.* at 824.  "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action."  *Pegram*, 361 F.3d at 282 (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).  Bailey asserts he was discriminated against, on account of his race and age, because he was not permitted to return to work with restrictions after his second knee surgery.  Even if true, the denial of workplace accommodations is not an "ultimate employment decision" that can give rise to a claim of discrimination under Title VII or the ADEA.

Bailey's claim that he was denied merit-based raises to which he was entitled also cannot form the basis of a claim of race or age discrimination.  Although the denial of a promotion may qualify as an adverse employment action, Bailey does not assert (let alone present evidence) that he applied for and was denied a new position.  *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000).  Compensation decisions also may qualify as adverse employment actions, but Bailey does not provide any actual evidence of a denial of a raise to the Court.  Bailey merely contends that he should have received a raise because he was a model and devoted employee but he did not.

Bailey's summary judgment response references the denial of raises on two occasions. First, he generally complains that Ms. Mendoza told him during an open meeting with employees in August 2019 that "hard work would be rewarded" by pay raises but that "raises won't be given" to those with "childish and petty" complaints (Bailey).  (Bailey Aff. [#23-1], at 3.)  Bailey also identifies two employees who received merit pay raises in 2019—Brandenn Segura and Miguel Fuentas—when he did not.  (*Id.* at 4.)  Yet the record establishes that Bailey *did* receive merit raises during his employment, both in April 2018 and again in September 2019, when he was promoted to Scale House Operator 2.  (Hildebrand Decl. [#22-2], at ¶ 3.)  Significantly, the promotion and pay raise occurred just one month after the alleged interaction with Ms. Mendoza.

Regardless, even if Bailey could establish that there was a pay raise he should have received but did not due to discrimination, he has not identified acceptable comparators.  To be similarly situated for purposes of Title VII and the ADEA, an employee must be employed in "nearly identical circumstances."  *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304–05 (5th Cir. 2000).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 868 (5th Cir. 2016) (internal quotation and citation omitted).  Bailey identifies Mr. Segura and Mr. Fuentas as younger, non-Black employees who received raises, but Mr. Segura was not a Scale House Operator; he was a Transloader.  (*Id.* at ¶ 10.)  Although Mr. Fuentas was also a Scale House Operator like Bailey, he was cross-trained in multiple roles at the terminal.  (*Id.* at ¶ 8.)  And neither of these individuals had record of any disciplinary actions predating their pay increases.  (*Id.* at ¶¶ 9–10.)  Neither Mr. Fuentas nor Mr. Segura were

employed under nearly identical circumstances as Bailey and therefore cannot serve as comparators.

In summary, because Bailey cannot prove he was subjected to an adverse employment action or treated differently than a similarly situated employee of a different race and age, he cannot prevail on his age and race discrimination claims under Title VII and the ADEA.

### iii. **Bailey cannot prevail on his hostile work environment claim because the record does not contain evidence of severe and pervasive harassment based on race, age, or disability.**

Bailey alleges he was subjected to a hostile work environment due to his race, age, and disability. (Compl. [#1], at ¶ 2; Bailey Aff. [#23-1], at 8.) Bailey cannot prevail on any of these claims. To prevail on these claims, Bailey must establish (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) such harassment was based on the protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (ADA); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (ADEA); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (Title VII).

Harassment is only actionable if the harassment was "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Ramsey*, 286 F.3d at 268. To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). To determine whether an environment was objectively offensive, courts consider the totality of the circumstances,

15

including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *E.E.O.C. v. WC & M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).

Bailey's response does not specifically identify the conduct he believes contributed to a hostile work environment. In fact, Bailey's response repeatedly directs the Court to read his entire 16-page affidavit for evidence sufficient to defeat Twin Eagle's motion for summary judgment, without directing the Court to the evidence relating to each claim. Although there is a separate section devoted to hostile work environment in the affidavit, the only incident referenced in this section relates to the May 2018 incident regarding the drug test and an allegedly aggressive unnamed man in a truck. (Bailey Decl. [#23-1], at 8–9.) This incident, if indeed occurring in May 2018, is outside of the limitations period. (*See* Section IV.A. *supra*.) However, even considering this incident along with the alleged denial of merit-based pay raises and the denial of light-duty assignments post-surgery, Bailey has failed to identify evidence of a level of harassment severe enough to affect a term, condition, or privilege of employment. Bailey admits in his deposition that no one at Twin Eagle ever use any derogatory terms against him on account of his race or made comments to others about their race. (Bailey Dep. [#22-3], at 167:3–7.) Moreover, there are no facts in the record linking any of these actions, even if true, to Bailey's race, age, or alleged disability. Without circumstantial evidence to substantiate this belief, Bailey's claims of a hostile work environment fail as a matter of law.

## V.  Conclusion and Recommendation

Having considered Twin Eagle's motion, the response and reply thereto, the summary judgment record, and governing law, the undersigned **recommends** that Defendant Twin Eagle's Motion for Summary Judgment [#22] be **GRANTED**.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal

conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc).

      SIGNED this 30th day of January, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

18